IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-96-FL

| WESTMINSTER NURSING CENTER, | ) | |
|---|---|---|
| d/b/a VALLEY NURSING CENTER, as | ) | |
| Authorized Representative of: MARY | ) | |
| SHOOK, CATHERINE GLASCO, | ) | |
| DARRYL BROWN, BOYD MCKAY, | ) | |
| ELIJAH MORTON, GLORIA | ) | |
| PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MANDY K. COHEN, in her official | ) | |
| capacity as the Secretary of the North | ) | |
| Carolina Department of Health and Human | ) | |
| Services, | ) | |
| | ) | |
| Defendant.[1] | ) | |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6). (DE 18). The motion has been fully briefed, and the issues presented are ripe for ruling. For the reasons that follow, the motion is granted in part and denied in part.

---

[1] In some instances, the complaint and plaintiff's response in opposition to the instant motion to dismiss refer to Mary Shook ("Shook"), Catherine Glasco ("Glasco"), Darryl Brown ("Brown"), Boyd McKay ("McKay"), Elijah Morton ("Morton"), and Gloria Patterson ("Patterson") (collectively, "the residents") as "plaintiffs." However, where the caption of the second amended complaint names plaintiff as authorized representative of the residents without naming the residents as parties appearing for themselves, and where no notice of appearance, notice of self-representation, nor financial disclosure statement has been filed pertaining to any of the residents, the residents have not been joined as parties to this action. See Local Civil Rule 5.2. Therefore, the caption has been amended so that "plaintiff" now is designated in the singular.

**BACKGROUND**

Under the Medicaid Act and implementing regulations, Medicaid recipients who require long-term care in a nursing home facility are required to use some of their income to pay for the cost of care. The parties refer to this payment as "patient monthly liability." Regulations promulgated by the Centers for Medicare & Medicaid Services ("CMS") include instructions directed to state Medicaid authorities specifying how the state must calculate patient monthly liability.

Plaintiff initiated this action February 17, 2017, seeking relief based upon defendant's alleged miscalculation of the residents' patient monthly liability and refusal to adjust the same. In counts one and seven, plaintiff seeks declaratory judgment and injunctive relief hinged on violations of substantive law described in counts two through six. In count two, plaintiff alleges violations of the Medicaid Act's medical assistance and nursing facility services mandate. 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A). In count three, plaintiff alleges violations of the Medicaid Act's reasonable promptness requirement. 42 U.S.C. § 1396a(a)(8). In count four, plaintiff alleges violations of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12132 et seq. In count five, plaintiff alleges violations of the Rehabilitation Act of 1973 ("Rehabilitation Act"). 29 U.S.C. § 794 et seq. In count six, plaintiff alleges violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution. U.S. Const. amend. XIV. Plaintiff asserts counts two, three, and six through the vehicle of 42 U.S.C. § 1983. The parties dispute whether the relief plaintiff seeks properly may be characterized as monetary or injunctive.

Defendant filed the instant motion June 19, 2017, seeking dismissal for lack of standing, failure to exhaust administrative remedies, failure to state a claim, and under principles of Eleventh Amendment immunity. Plaintiff responded in opposition, and defendant replied.

# STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff is engaged in the business of providing long-term nursing home care at various locations within North Carolina. (DE 20 ¶ 1). The residents are Medicaid recipients who live at plaintiff's facilities. (Id. ¶¶ 3–8). Defendant is Secretary of the North Carolina Department of Health and Human Services ("NCDHS"), which agency is charged with administration of North Carolina's Medicaid program. (Id. ¶ 2).

At some point while receiving care at plaintiff's facilities, each resident was assigned a patient monthly liability. (Id. ¶¶ 3–8). However, in each case, there was a gap in time between assignment of patient monthly liability and plaintiff's receipt of any payment. (See id.). The complaint does not explain why any of the residents failed to tender certain patient monthly liability payments, but documents submitted by defendant suggest that at least some of the residents are victims of fraud whereby a third party intercepted social security payments that a resident could have used to discharge patient monthly liability. (See DE 19-2 at 2). During periods in which the residents failed to pay their patient monthly liability, each resident incurred a negative account balance with plaintiff. (DE 20 ¶¶ 3–8).

To address any negative balance, each resident applied to defendant for a deviation in patient monthly liability. (Id.). However, applying section MA-2270 VIII(A)(7) of the NCDHS Aged, Blind and Disabled Medicaid Manual, Long Term Care Need and Budgeting ("section MA-2270"), under which provision defendant will not cover an arrearage in patient monthly liability, defendant denied each application. (DE 20 ¶ 20). Section MA-2270 was never submitted to CMS for approval as part of North Carolina's Medicaid state plan. (DE 20 ¶ 26).

3

Following, in some cases, defendant's inaction on the residents' claims and, in other cases, denial of the same, plaintiff initiated this action.

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Under Rule 12(b)(1), the plaintiff bears the burden of showing that subject matter jurisdiction is appropriate. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. When the defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable

expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

   1.   Standing

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Stop Reckless Economic Instability Caused by Democrats v. Fed. Election Com'n., 814 F.3d 221, 228 (4th Cir. 2016) (citations omitted). Accordingly, "federal courts are not free to simply assume that they possess subject-matter jurisdiction and then proceed to decide the merits of the issue before them when their jurisdiction remains in doubt." Id. "Rather, federal court must determine whether they have subject-matter jurisdiction over a claim before proceeding to address its merits." Id.

Article III of the United States Constitution restricts federal court jurisdiction to actual "cases" and "controversies." U.S. Const. art. III, § 2. The requirement that a party invoking jurisdiction must have standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) the injury is fairly

traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc., v. Laidlaw Envtl. Servs., 528 U.S. 167, 180–81 (2000) (citing Lujan, 504 U.S. at 560–61); see also Allen v. Wright, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."). The court's standing inquiry is "focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008).

"An association can allege standing based upon two distinct theories." Md. Hwys. Contractors Ass'n, Inc. v. State of Md., 933 F.2d 1246, 1250 (4th Cir. 1991). "First, the association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." Id. "Second, the association may have standing as the representative of its members." Id.

Plaintiff has standing to sue in its own right for claims pertaining to residents Morton, Patterson, and Shook, where those residents assigned their right to receive Medicaid benefits to plaintiff. See Sprint Commc'ns. Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 285 (2008) ("Lawsuits by assignees . . . are "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process."); (DE 22-8 at 5 (Morton assignment provision), 10 (Patterson assignment provision), 11 (Shook assignment provision). Plaintiff does not dispute that it has no standing to sue in its own right as to other residents where entitlement to Medicaid benefits is the property of the recipient, not of any healthcare provider, unless assigned. See O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 787 (1980) (holding that "direct benefits" under Medicaid "give

6

the patients an opportunity to obtain medical services from provides of their choice" and holding that such direct benefits constitute the recipient's property).

An organization has standing to seek redress for the injuries of its members if it satisfies the three prong Hunt test. Hunt v. Washington State Apple Advertising Comm'n., 432 U.S. 333, 343 (1977); United Food and Commercial Workers Union Local 751 v. Brown Grp, Inc., 517 U.S. 544, 555 (1996). First, an organization's membership must "include at least one member with standing to present, in his or her own right, the claim (or type of claim) pleaded by the [organization.]" Local 751, 417 U.S. at 555; see Sierra Club v. Morton, 405 U.S. 727, 735 (1972) (plaintiff lacked standing where it failed to allege that "it or its members would be affected in any of their activities or pastimes by the [challenged] development."). Second, an organization must "be organized for a purpose germane to the subject of its member's claim . . . " Local 751, 417 U.S. at 555. Third, an organization may assert only those claims and seek such relief as does not "require[] the participation of individual members in the lawsuit." Hunt, 432 US. at 343.

Authorization agreements signed by the residents establish that plaintiff's business model involves a dual purpose whereby plaintiff both provides long-term care services and pursues Medicaid eligibility on behalf of its residents. (See, e.g., DE 22-8 at 2 ("I understand and agree that any legal proceedings in regards to my Medicaid eligibility may be pursued either in my name or in the name of the facility."). In light of this observation, plaintiff satisfies the first Hunt prong where denial of Medicaid benefits vests each resident "with standing to present, in his or her own right, the claim . . . pleaded by [plaintiff.]" See Local 751, 417 U.S. at 555. Under the second prong, plaintiff's purpose, which includes pursing Medicaid claims on behalf of residents, is germane to the residents' Medicaid claims. See id. Finally, under the third prong, where the validity of

7

defendant's method of calculating patient monthly liability is a question of law, relief does not "require[] the participation of individual members in the lawsuit." See Hunt, 432 U.S. at 343. Accordingly, where it satisfies all three prongs of the Hunt test, plaintiff has standing as an organization to assert the instant claims on behalf of all the residents. See id.

Defendant argues that plaintiff lacks standing to sue on behalf of the residents where the complaint includes no allegation that the residents have assigned their rights to plaintiff. However, this argument fails where the court may consider evidence outside the pleadings to determine whether plaintiff has standing to sue. See Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768. Moreover, assignment of rights is not required to establish an organization's standing under the Hunt test. See Hunt, 432 U.S. at 343. Therefore, defendant's motion to dismiss for lack of standing is denied.

2. Disability Discrimination Claims

Where plaintiff's claims under the ADA, the Rehabilitation Act, and Equal Protection Clause rest upon similar theories, the court addresses these claims together.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Disability discrimination by state actors may implicate the Equal Protection Clause where such action violates the requirement

8

that "all persons similarly situated . . . be treated alike. Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).

Due to the similar statutory language in the ADA and Rehabilitation Act, they are construed to impose the same requirements. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 n.17 (4th Cir. 2005). A plaintiff seeking recovery for a violation of either the ADA or the Rehabilitation Act must show that: (1) he has a disability; (2) he is otherwise qualified to receive benefits of a public service, program, or activity; and (3) he was excluded from participation in or denied the benefits of such service, on the basis of his disability. Constantine, 411 F.3d at 498. Under the third element, with respect to the ADA, a plaintiff must show that disability "played a motivating role" in the adverse action, and under the Rehabilitation Act, a plaintiff must show that any adverse action was taken "solely by reason" of his disability. Id. n.17 (quoting and citing Baird v. Rose, 192 F.3d 462, 469-70 (4th Cir. 1999)). Similarly, where the Equal Protection Clause requires a showing of discrimination among similarly situated individuals, a plaintiff asserting disability discrimination under that clause must demonstrate that a state action affected disabled individuals differently than non-disabled individuals. See Cleburne, 473 U.S. at 439.

Plaintiff's claims of disability discrimination rest upon allegation that "[defendant]'s failure to afford [the residents] their public benefits and services, to which [they] are entitled under federal law, and failure to grant them Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA [and] the Rehabilitation Act . . ." (DE 20 ¶ 38). This theory fails under the Equal Protection Clause and the third element of both the ADA and the Rehabilitation Act where plaintiff alleges no facts giving rise to an inference of discrimination on the basis of disability. That is, plaintiff fails to allege any instance where defendant approved

9

claims filed by non-disabled persons and denied same filed by disabled persons. Accordingly, plaintiff's claims of discrimination rest upon no factual basis and are, therefore, conclusory in nature. See Iqbal, 556 U.S. at 678. Thus, plaintiff's claims under the ADA, the Rehabilitation Act, and the Equal Protection Clause are dismissed. See id.

      3.     Prerequisites to Section 1983 Claims

Defendant argues that the complaint fails to satisfy certain prerequisites applicable to claims under section 1983. The court addresses, first, argument that plaintiff seeks retrospective relief barred by the Eleventh Amendment, and, second, argument that plaintiff failed to exhaust administrative remedies

          a.     Eleventh Amendment

State agencies can be sued for prospective injunctive relief to comply with the federal Constitution and federal statutes. See Ex parte Young, 209 U.S. 123 (1908); McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010) ("[Ex parte Young,] [] permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such suit is not a suit against the state for purposes of the Eleventh Amendment.") (citation omitted). "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages'" Bowen v. Massachusetts, 487 U.S. 879, 893 (1988). Accordingly, relief that "merely requires [an agency] to pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper [rule]" properly may be characterized as "prospective." Id. at 894 (quotations omitted).

Here, the complaint alleges that the residents were injured when they incurred liability based upon costs defendant should have paid. (See, e.g., DE20 ¶ 60). This allegation tracks closely the

10

holding of Bowen in which the Court stated expressly that a suit seeking recovery for expenses that an agency should have paid in the first instance properly may be characterized as seeking prospective relief. See id. Accordingly, plaintiff's section 1983 claims are not barred by the Eleventh Amendment.

Defendant argues that where plaintiff's prayer for relief calls for reversal of defendant's decision to deny the residents' requests for deviation in patient monthly liability and "compensatory and punitive damages, interest, expenses and costs" (DE 20 ¶ 7), plaintiff seeks impermissible retrospective relief. To the extent plaintiff seeks compensation other than for expenses defendant should have paid under rules applicable to plaintiff's claims, plaintiff's prayers for compensatory and punitive damages are retrospective in nature and must be dismissed. See Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("[A]n unconsenting State is immune from suits brought in federal court by her own citizens as well as citizen of another State."). However, to the extent plaintiff seeks belated payment of expenses that defendant should have paid pursuant to rules applicable under the Medicaid Act, plaintiff's claims may proceed. See Bowen, 487 U.S. at 894. Moreover, defendant has not demonstrated that ancillary relief, such as interest, costs of court, or attorneys' fees, are unavailable in an action of this nature. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 279 (1989) ("[A]n award of attorney's fees ancillary to prospective relief is not subject to the structures of the Eleventh Amendment."). Therefore, these prayers for relief are not subject to dismissal at this juncture.

    b.  Exhaustion of Administrative Remedies

The court turns now to defendant's argument that plaintiff failed to exhaust administrative remedies.

Generally, a plaintiff may not sue in federal court for redress of allegedly unlawful state action without first exhausting available state administrative remedies. See Gibson v. Berryhill, 411 U.S. 564, 574 (1973). The requirement of exhaustion of administrative remedies "does not apply generally to state 'judicial,' as opposed to 'administrative' remedies." Id. at 574 n.1. Moreover, "state administrative remedies need not be exhausted where the federal court plaintiff states an otherwise good cause of action under 42 U.S.C. § 1983." Id.

Here, plaintiff's claims based upon defendant's alleged failure to remit certain Medicaid benefits and violations of the Due Process Clause arise under section 1983. Accordingly, there is no requirement applicable to these claims that plaintiff exhaust state administrative remedies. See Gibson, 411 U.S. at 574.

Defendant argues that an exhaustion requirement applies to this case under Moore v. City of Asheville, N.C., in which the Fourth Circuit held that "a defendant to a coercive state administrative proceed must exhaust his state administrative and judicial remedies and may not bypass them in favor of a federal court proceeding in which he seeks effectively to annul the results of a state administrative body." 396 F.3d 385, 388 (4th Cir. 2005). Moore represents an application of the Younger abstention doctrine, which holds that a federal court must abstain from enjoining a pending state criminal proceeding, Younger v. Harris, 401 U.S. 37, 41 (1971), to analogous "coercive" administrative proceedings when such proceedings implicate "the same concerns for federalism and comity that animate established Younger jurisprudence[.]" Moore, 396 F.3d at 388.

This argument fails because plaintiff does not stand as defendant in a coercive proceeding, but seeks an award of benefits under a spending program. Accordingly, defendant's citation to Moore is inapposite, and the issue is controlled instead by Gibson and similar case law holding that

a plaintiff in a civil case need not exhaust administrative remedies to proceed in federal court under section 1983. Gibson, 411 U.S. at 574; see also McCray v. Burrell, 516 F.2d 357, 363–64 (4th Cir. 1975) (holding that "exhaustion may be necessary only when it assures that a decision of state officials depriving plaintiff of a civil right is final, so that the case is ripe for adjudication.").

  4.  Procedural Due Process

The Due Process Clause of the Fourteenth Amendment to the Constitution provides that "[n]o person shall . . . . be deprived of life, liberty, or property without due process of law . . ." U.S. Const. amend. XIV. Determining the scope of procedural protections guaranteed by the Due Process Clause is a two-step inquiry. Morrissey v. Brewer, 408 U.S. 471, 481 (1972). First, the court determines whether a claimant possesses an interest triggering the Due Process Clause. Id. Second, the court determines what process is due. Id.

Procedural protections guaranteed by the Due Process Clause attach when the government takes action to impair a property interest. Goldberg v. Kelly, 397 U.S. 254, 261–62 (1970). A claim to a government-created benefit rises to the level of a property interest when the recipient can assert "a legitimate claim of entitlement" to the benefit. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). A recipient can assert a legitimate clam of entitlement when the benefit in question is grounded in non-constitutional law, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985), and is awarded or revoked according to "rules . . . that [the holder] may invoke at a hearing." Perry v. Sindermann, 408 U.S. 593, 600–601 (1972).

Based upon the statutory requirement that defendant must grant Medicaid benefits to any qualified applicant and cannot revoke such benefits absent a determination that a recipient is no longer eligible, see 42 U.S.C. § 1396a, a Medicaid recipient possesses a legitimate claim of

13

entitlement to Medicaid benefits. See Roth, 480 U.S. 577. Accordingly, protections afforded under the Due Process Clause apply to procedures determining the level of benefits to which a Medicaid recipient is entitled. See Goldberg, 397 U.S. at 261–62.

The fundamental requirement of due process is opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotations omitted). Nonetheless, "[d]ue process is flexible and calls for such procedural protections as the particular situations demands." Id. at 334. To determine the specific requirements of due process, courts apply Matthews balancing, weighing first, an aggrieved party's interest in a disputed benefit; second, the likely increment to adjudicatory accuracy derived from additional or substitute procedures; and, finally, cost to the government that additional or substitute procedures would impose. Id. at 335.

Here, plaintiff has made no allegations suggesting any denial of due process. With respect to residents Shook, Boyd, McKay, and Morton, plaintiff alleges only that these residents' requests for deviation in patient monthly liability was denied. (DE 20 ¶¶ 3, 6, 7). Plaintiff further alleges that the same requests filed by residents Darryl Brown and Patterson were "not approved" and that defendant failed to "follow up on the request[.]" (Id. ¶¶ 5, 8). Finally, plaintiff alleges that resident Glasco's request for deviation and request for appeal was denied. (Id. ¶ 4). None of the foregoing allegations suggests that any additional procedural protections are needed to adjudicate accurately plaintiff's claims. In particular, plaintiff fails to plead that plaintiff or the residents properly invoked available procedures or that any such procedures were unavailable. Thus, the well-pleaded allegations establish only that plaintiff's claims were denied; the allegations do not establish that said claims were denied without due process. See Matthews, 424 U.S. at 333. Accordingly,

plaintiff's claims under the Due Process Clause are dismissed for failure to state a claim. See Iqbal, 556 U.S. at 678.

    5.    Reasonable Promptness

Under the "reasonable promptness" provision of the Medicaid Act, "[a] State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals . . . ." 42 U.S.C. § 1396a(a)(8). "The reasonable promptness provision found in § 1396a(a)(8) . . . gives rise to a right enforceable under § 1983" Doe v. Kidd, 501 F.3d 348, 356.

With respect to residents Shook, Glasco, McKay, and Morton, the complaint fails to allege the date on which a request for deviation in patient monthly liability was denied. (DE 20 ¶ 3). Without this fact, the court cannot assess whether the defendant discharged its duty to process these residents' claims with reasonable promptness. Therefore, plaintiff's reasonable promptness claims fail to state a claim to the extent they embrace residents Shook, Glasco, McKay, and Morton. See Iqbal, 556 U.S. at 678.

With respect to residents Brown and Patterson, the complaint alleges only that defendant "has not approved the request." (DE 20 ¶¶ 5, 8). However, failure to approve a claim, of itself, does not establish that decision on a claim was unreasonably delayed. In particular, plaintiff has failed to plead facts establishing that Brown and Patterson validly invoked any procedures available, such as established appeal procedures, that would have prompted defendant to finally adjudicate their claims. Accordingly, the well-pleaded facts do not establish that decision on Brown's and Patterson's claims was unreasonably delayed. See 42 U.S.C. § 1398a(a)(8). Therefore, plaintiff's

15

reasonable promptness claims also fail to state a claim to the extent they embrace residents Brown and Patterson. See Iqbal, 556 U.S. at 678.

In its response, plaintiff does not address its failure to allege facts supporting an inference that any delay in adjudication of the residents' claims was unreasonable. Accordingly, plaintiff's claims under the reasonable promptness provision of the Medicaid Act are dismissed.

6. Medical Assistance and Nursing Facility Services Mandate

Under 42 U.S.C. § 1396a(a)(10)(A), a state plan must make available "medical assistance" to all qualifying individuals as defined in that section. "[M]edical assistance" is defined to include "nursing facility services . . ." 42 U.S.C. § 1396d(a)(4)(A). Under CMS regulations, defendant "must reduce its payment to [a long-term nursing care] institution, . . . by the amount that remains after deducting the amounts specified in paragraphs (c) and (d) of [section 435.725], from the individual's total income." 42 C.F.R. § 435.725. In other words, the regulations allow defendant to reduce payments for long-term nursing home care if a resident has independent income, but defendant may not consider as income amounts that the regulations allow a resident to set aside for other purposes. See id.

Among deductions defendant is required to allow is "[a]mounts for incurred expenses for . . . [n]ecessary or remedial care recognized under State law but not covered under the State's Medicaid plan . . ." Id. § 435.725(c)(4)(ii). CMS regulations do not specify whether an unpaid patient monthly liability qualifies as a necessary medical expense contemplated by the foregoing provision. However, section MA-2270 fills this gap in the regulations, providing that defendant will not consider an arrearage in patient monthly liability as a type of necessary medical expense that must be deducted from patient monthly liability. Id.

16

To qualify for federal funds, a State must submit its Medicaid plan and any amendments to CMS and receive approval. 42 U.S.C. § 1316(a)(1), (b). "Before granting approval, [CMS] reviews the State's plan and amendments to determine whether they comply with the statutory and regulatory requirements governing the Medicaid program." Douglas v. Indep. Living Ctr. of S. Cal., Inc., 565 U.S. 606, 610 (2012).

Plaintiff alleges that defendant adjudicated the residents' claims under section MA-2270 without submitting that provision for CMS approval first. (DE 20 ¶ 20). "[P]ower to make rules that affect substantial individual rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, but also to employ procedures that conform to the law." Morton v. Ruiz, 415 U.S. 199, 232 (1974) (emphasis added) (holding invalid an attempt by the Bureau of Indian Affairs to adjudicate certain Indian's rights based upon a rule that was included in an agency policy manual but was not promulgated pursuant to the rulemaking provisions of the Administrative Procedure Act, as required to treat a rule as legislative in nature); see also, Perez v. Mortgage Bankers Ass'n., 135 S.Ct. 1199, 1203–04 (2015) (distinguishing legislative and interpretative rules on the ground that the former have the force and effect of law but only after completion of notice-and-comment rulemaking procedures).

Where defendant adjudicated plaintiff's claims on the basis of a rule was that was not promulgated in accordance with rulemaking procedures applicable to a state plan amendment, the adjudication is invalid. See Morton, 415 U.S. at 232. That is where defendant was required to promulgate rules comprising its state plan by submitting same for approval by CMS, but failed to do so in this instance, defendant cannot deny plaintiff's application for benefits on the basis of the improperly promulgated rule. See id. Accordingly, defendant's motion to dismiss plaintiff's claims

17

under the medical assistance and nursing facility services mandate is denied.

Defendant argues that the medical assistance and nursing facility services mandate does not create a "right" enforceable through section 1983. To determine whether a statutory provision creates a private right enforceable under section 1983, courts must consider three factors set forth in Blessing v. Freestone. 520 U.S. 329, 342 (1997).

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Id. at 340–41. "Even where the presence of these three factors creates a presumption that a statutory provision gives rise to an individual right, [the court] must consider whether Congress expressly or impliedly foreclosed a remedy under § 1983." Kidd, 501 F.3d at 356.

Applying the Blessing test to the medical assistance and nursing facility services mandate provisions found in 42 U.S.C. §§ 1396a(a)(10)(A) & 1396d(a)(4)(A), and tracking the Fourth Circuit's similar analysis pertaining to the reasonable promptness requirement held enforceable through section 1983 in Kidd, the provisions in issue here give rise to a right enforceable under section 1983. First, the nursing facility services mandate provision expressly is intended to benefit all individuals who qualify for financial assistance based upon age, blindness, disability, or financial need, and defendant does not dispute that these groups include the residents. See 42 U.S.C. § 1396a(a)(10).

Second, section 1396d(a)(4)(A) "is not so vague and ambiguous that the judiciary cannot competently enforce it." Kidd, 501 F.3d at 356. Indeed, a directive to "provide . . . nursing facility services" is at least as clear as the directive to adjudicate claims with "reasonable promptness" held

18

judicially administrable in Kidd.  See id.

Third, the statute's directive that "a State plan for medical assistance must . . . provide (A) for making medical assistance available . . ." 42 U.S.C. § 1396a(a)(10)(A) (emphasis added) to specified groups encompassing the residents is "couched in mandatory, rather than precatory, terms."  See Blessing, 501 F.3d at 340–41.

Finally, the Medicaid Act does not expressly or impliedly forbid recourse under section 1983.  Kidd, 510 F.3d at 356 ("[A]lthough the [Medicaid] Act provides that states should adopt a fair hearing process, the Act does not contain a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." ).  Accordingly, defendant's motion to dismiss plaintiff's claims under the medical assistance and nursing facility services mandate is denied.

### 7. Ancillary Claims

Counts one and seven, in which plaintiff seeks declaratory and injunctive relief, do not constitute independent causes of action.  Those counts more properly may be characterized as prayers for relief hinged on plaintiff's substantive claims.  See Fed. R. Civ. P. 8(a)(3).  Where plaintiff's claims based upon the Medicaid Act's medical assistance and nursing facility services mandate, embodied in count two, survive, defendant does not advance on motion any specific basis for denial of declaratory or injunctive relief.  In this part, the motion is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss, (DE 18) is GRANTED IN PART AND DENIED IN PART.  Counts three, four, five, and six are DISMISSED.  Count two, on which it appears plaintiff seeks declaratory and injunctive relief, is allowed to proceed.  An initial order

regarding planning and scheduling will follow.

SO ORDERED, this the 22nd day of November, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge